Electors Guild Incorporated v. Bank of America has been submitted on the briefs. And so we're ready to proceed then with Juan Salazar-Garcia v. Merrick v. Garland if counsel are ready. Good morning, Your Honor. May it please the court. Karen Monreal on behalf of the petitioner, Mr. Juan Salazar. I would like to reserve two minutes for rebuttal. Your Honor, this is a case, this is a very unfortunate case in where the petitioner was really at the peak of his career, of his life. He had purchased a home with his wife. They opened a family business. The petitioner had been 20 years without drinking. And subsequently, he was placed in removal proceedings. The immigration judge and then later the agency denied his claims stating that he was ineligible to be granted cancellation of removal because he was found to be a habitual drunkard. Now, this was in error. And there's two reasons why this case should be remanded. First of all, was that the petitioner, there was not enough evidence to establish that he was a habitual drunkard. And secondly, his due process rights were violated when he wasn't put on notice that this would be an issue that the government would be bringing up. There was, and I'll address the second issue. There was various preliminary hearings and the government did at one point bring up the issue about his criminal history, and whether that would preclude him from applying for cancellation of removal. And the petitioner in this case briefed the issue. And the immigration judge asked the government, is there any other issues that we need to bring up before going to the government that this issue was brought up? And this caught the petitioner by surprise. Had he been aware that this was going to be an issue, that the record could have been developed, questions could have been elicited from the petitioner to establish that no, he wasn't drinking in excess, that he was not a habitual drunkard. But this is a process argument one was made in the briefs? It was your honor. Yes. Let me ask you, before I go into some questions regarding habitual drunkard. How should we view Mr. Salazar Garcia's recent criminal conduct in light of his application for cancellation of removal? I'm trying to figure out, is it your position that two domestic violence incidents and then a recent DUI conviction do not preclude a showing of good moral character? Well, your honor, for showing a good moral character, especially when there is a criminal record involved, in this case, the domestic violence incidents and the DUI, the immigration judge has a discretion to determine whether this person, despite his criminal record, could still be a person of good moral character. And in this case, your honor, as I said, it is a very unfortunate case. It doesn't make it okay that he had those arrests. However, he was dealing with grief and undiagnosed depression. The petitioner's son had committed suicide and the family was just not able to cope with the for a few months. And then that stopped. And that is really when the petitioner started drinking. But in the agency decision, the agency states that he was drinking on a daily basis. Now, this isn't supported by the record. The petitioner said himself that he was drinking, yes, once or twice per week. He was drinking approximately four shots of brandy once or twice per week, not on an everyday basis. I mean, his wife testified that he did drink every day. And the IJ credited that. I don't know that this distinction is ultimately that material, but there was evidence in the record that he drank daily. Your honor, and even so, even if let's say for a minute that, okay, he was drinking every day. Well, really to determine whether a person is a habitual drunkard, we need to focus on the individual's conduct. Now, in Ledesma, this court held that this person, the petitioner in Ledesma was a habitual drunkard because he was drinking more than one liter of tequila every day. He had a 10-year history of drinking. He had a DOI conviction and he had a liver failure. In this case, this is not the issue with the petitioner. The petitioner had stopped drinking. He wasn't drinking for 20 years. Now, if we look solely at the conduct of the petitioner, really, if a person is a person that drinks in excess, that has lost their ability to control their drinking, surely there is some consequences that come about that loss of control of their drinking. That is something that's not present in this case. The petitioner was able to control his drinking. The petitioner's wife testified that when she was able to comfort him about the death of their son, he would stop drinking for three weeks. Now, this doesn't sound like someone that has lost their You're obviously correct. This is an unfortunate case. It is a truly sad case. When you look at the substantial evidence of standard and you have evidence of heavy drinking at least several days per week, several incidents of alcohol-related domestic violence, DUI, I guess it's difficult to see why at least substantial evidence wouldn't support that decision, even though as a matter of discretion, perhaps the government could do otherwise, but that wasn't necessarily up to the IGA. Your Honor, here we're looking at what has transpired since then. The petitioner was diagnosed while incarcerated. He was diagnosed with depression. He was given antidepressants, and that has helped him. The petitioner is no longer detained and continues to live a style of abstaining from alcohol. Although there are those criminal arrests, those criminal issues in his case, we also have to look at just the totality of the case, the totality of his conduct, and not just solely focus on the criminal aspect because a determination that he is a habitual drunkard would depend on the totality of his conduct. He was able to keep a job. He wasn't ever drinking while he was working. He was able to stop drinking when he was able to control his depression, but at that point was undiagnosed. He didn't have any type of medical problems because arising from his drinking. Those are the factors that the agency did not take into consideration. The agency simply said, well, he's drinking in excess, and therefore he is a habitual drunkard. They didn't explain and incorporate all of the other factors in the petitioner's case and the fact that he wasn't always drinking. The fact that he was able to live a healthy lifestyle and resorted to drinking when he was depressed, unbeknownst to him that he had an actual diagnosis of depression during that case. Also, the Sixth Circuit has held that the focus to determine whether a person is a habitual drunkard would be the conduct that's associated. Again, I go back to this wasn't examined by the agency. The agency solely focused on the wife's testimony that he was drinking on a daily basis, which in fact, she also testified that she didn't see him drink on a daily basis, but she assumed. Another thing is that if he was drinking, he was able to make responsible choices such as, well, if I'm drinking, I'm going to stay. The agency had a different view of that. I think the agency saw convictions for domestic violence that had been fueled by one view. The agency seems to have a different view. The question is, does the record compel your view? I'm having difficulty with that. Your Honor, there is issues of criminal conduct related to alcohol. In La Desma, the court held, however, that a person that's an alcoholic is different from a person that is a habitual drunkard. Although the petitioner at this point may have had alcohol-related problems, that didn't necessarily mean that he was a habitual drunkard. There was more factors that should have been taken into consideration, or at least given the petitioner an opportunity to rebut these claims. It looks like you're out of time. I'll give you two minutes for rebuttal. Let's go ahead and proceed with your opposing counsel. Good morning. My name is Monica Anton, appearing on behalf of the Attorney General. This case is undoubtedly a tragic case, but as the IJ saw it, and as the law stands, this finding is a non-discretionary finding. Unfortunately, the circumstances that Ms. Monreal has pointed out as discretionary factors favoring Mr. Salazar are not appropriately considered in whether he, as the court defined it in La Desma. It certainly is exceptional, though. I mean, I've been doing this for nearly 20 years, and offhand, I don't recall a case where an IJ goes to the trouble of saying, weighing the discretionary factors, I would find the extraordinary circumstance that's necessary to grant cancellation, but he understood under the law that this was not a discretionary factor. But it is odd to have an arrangement like that. I don't know if you've encountered a case like that. Like I say, I have not, and it makes me wonder. Let me start with this. Has this case been the No, it has not. You know whether the agency would be willing to entertain mediation of this case, because it does appear pretty exceptional. I talked about it with my supervisor, and we had considered the criminal history. I'm always happy to go into mediation to discuss options, and certainly Mr. Salazar would not be precluded from seeking discretion from the agency, from ICE, as to how the removal order would be executed or not in the future. I don't purport to know everything, and the court doesn't know everything that the agency knows. One thing that did catch my eye is that at the time the briefs were filed, perhaps no longer the case, that he was in detention. Is there any information that tells us why he was detained for a period of time? He was taken into local police custody. I believe it was in April of 2020 after the second arrest for the second domestic violence incident, and I believe it's in the I-213. I apologize. I don't have that page number handy without going through my notes, where DHS then took Mr. Salazar into immigration custody after he served his sentence for the domestic violence conviction. So he was taken into immigration detention directly from local police custody, and he was released I believe sometime within the last couple of months. Let me ask you, Ms. Antón, what has given me some pause and concern here. It looks like Mr. Salazar-Garcia and his wife, Ms. Hernandez, provided very different accounts of the petitioner's past alcohol abuse during the removal hearing. And the IJ found them both credible. And I'm just trying to figure out how can we reconcile this very different testimony with the IJ's ultimate finding that the petitioner here consumed alcohol on a daily basis. That distinction would be reflected in the difference between credibility versus persuasiveness. So the IJ might have credited Mr. Salazar's testimony on the basis that he genuinely believed or that he remembered certain habits, whereas Ms. Hernandez had a different memory of certain habits. And I guess that's what I'm kind of keying in on. Because even if the IJ here had found Ms. Hernandez's testimony more persuasive or believable, how do we know that? He doesn't say that. Can we speculate about how the IJ resolved this sort of key factual dispute? I'm trying to figure out where does the IJ indicate, if you can show me, because I've kind of been poring over this record, that he had reason to believe Hernandez instead of Salazar-Garcia when he finds them both credible. Can you help me with that? I'm looking at page 59 of the record, which is page five of the IJ's decision. So that would really be implicit in, let me go back a few pages. So the IJ first summarizes the testimony of Mr. Hernandez, pardon me, Mr. Salazar and Ms. Hernandez. And then on page five of the decision, after laying out the standard for good moral character and the definition of a habitual drunkard, the IJ makes the relevant findings about the frequency and relies on Ms. Hernandez's testimony that he would often sleep at his workplace and, excuse me, pardon me, pardon me, it's the first sentence. In this case, the testimony establishes that for a period of time from at least April 2018 to the present, slightly under two and a half years, the respondent was drinking on a daily basis. So it's apparent from that finding that the immigration judge credited the testimony of Ms. Hernandez regarding her observations of frequency. And I saw that, and I guess my concern, and maybe it's overly concerned, but I mean, it's an undue concern, but my concern with this finding is that Mr. Salazar-Garcia and of his past alcohol abuse during the time period, and the IJ doesn't acknowledge this tension or explain how he reconciled these very different accounts of Mr. Salazar-Garcia's alcohol use. Certainly doesn't seem to be able to be squared with Salazar-Garcia's testimony, because he testified that he would drink alcohol sporadically until around December 2019. And he also testified that between December 2019 and February 2020, he consumed four or five little bottles of brandy once or twice per week. And Ms. Hernandez, on the other hand, testified that Mr. Salazar started drinking alcohol heavily in April of 2018. And then I think when she was prompted, she said the petitioner consumed alcohol every week and every day. But she also said she wasn't there to witness it, and that she didn't see that happening when he was at work. And so it seems like there's some internal, I'm not sure if it's internally consistent, exactly what she's saying. And because she says, well, actually, I don't know how much he would be drinking, but he was always drinking. She testified that she would not see Salazar drinking alcohol because he would stay in the business, and it was at night, and he would come home. And the IJ never grappled with these factual distinctions. And shouldn't the IJ have, I mean, for us to say that there was substantial evidence to support it? I'm just wondering, isn't that the conclusion? And the IJ did so by relying on the testimony of Ms. Hernandez. And it's, there are certain inferences that can be drawn by combining the testimony. For example, Ms. Hernandez did say that she did not see him drinking every day, and that she only witnessed his behavior, but he sometimes slept at work. And then combined with Mr. Salazar's testimony, that he sometimes slept at work to avoid driving home after drinking. We can combine those two pieces of information and learn that she may not have seen him drinking because he was not home, but that he had stayed at work because of that. So these inferences are implicit in those findings that the IJ did rely on to make her finding regarding him. And I just, I'm just wondering how much the inference is there when there's other issues with respect to the IJ's finding, or at least, and I wanted to give you an opportunity, I'm going to take you a little bit over your time, because the next finding was the respondent that the IJ made is the respondent himself described that he would drink four or five small bottles of brandy. And it seems like this finding is taken a bit out of context, actually, because although he conceded, I think we was discussed previously, that he would drink four to five small bottles of brandy. He said he did so once or twice per week between December 2019 and February 2020. And the testimony supports that. And so if we're relying on drawing inferences, it seems like it has to be based on accurate, you know, testimony that was given and not taken out of context. The next finding that I have some pause with is the IJ's finding when he said his wife testified that he would often sleep at his workplace because he would be too intoxicated to drive home. And again, I think I mentioned that she didn't personally witness this. There was another reference that he was arrested twice for domestic violence while he was drinking and admittedly slapped his wife across the face on at least one of those occasions. But the question I had for you or the pause that I had with that is that Mr. Salazar Garcia was never asked whether he consumed alcohol during the and both of them provided conflicting testimony about whether he hit her in response to a question about whether Mr. Salazar Garcia hit Hernandez. He said, I don't remember, but I don't hit her. And it just I just without I just trying to figure out if don't we need more from the IJ to support the substantial evidence. And I just wanted to give you an opportunity to respond to those points of concern that I had. So I'm sorry for taking over time, but if you can respond in any way. Sure. As far as admittedly, the IJ had deleted that word in the final sign decision. So the IJ made the finding that Ms. Hernandez was slapped from her testimony and that incident she was personally present for and she had a certain experience of that and a certain memory of that that she testified to. So the fact that Mr. Salazar did not remember, I'm sorry, I'm just looking at the transcript on pages 142 to 143 is where they're discussing that incident. And there's some back and forth about whether he pushed her or not. And he says that, yes, maybe he did. And that they were arguing and he was bothered. As far as whether he was drinking during that incident, Ms. Hernandez's testimony is equally important because she was the one who had twice experienced violence as a result of the drinking. So her testimony as to what occurred during those incidents was just as relevant as what Mr. Salazar himself may or may not have less forthcoming about the details. Certainly, it could have been out of embarrassment or regret. This, of course, being a tragic case that it is. But you are providing a good basis, possibly. But the IJ never provided that basis is the only thing that I wanted to point out. But I don't know if my colleagues have any other questions for either of these counsel. All right. Thank you. Thank you. I'm sorry. Let me go back for rebuttal purposes. Unless you have any concluding statement, Ms. Anton, because I may have cut you off there. Oh, no, that's fine. I know that my time is long past. So if the court has no further questions, I'll submit on the brief. Thank you very much. Ms. Unreal Salazar. Thank you, Your Honor. And that is one of the issues that how many inferences do we have to make? Because the IJ did not provide enough evidence to substantiate the fact that to substantiate her finding that Mr. Salazar was a habitual drunkard. There is, as the court has the IJ basically focused on the Mr. Hernandez testimony that he was drinking on a daily basis when she said herself that she didn't witness this, where the petitioner of this case, Mr. Salazar said, I wasn't drinking every day. I was drinking once or twice per week. And further, the IJ just picked and chose the factors that she would use and the testimony that she would use. For example, she she didn't take into consideration. Well, what a finder of fact does. I'm sorry, Your Honor. Isn't that what a finder of fact does? You have an array of evidence, some of the form of testimony, in some cases documents. And the finder of fact has the task of deciding what has persuaded the finder of fact to reach a given conclusion. The conclusion is here. But the standard we have to apply is, does the evidence compel a contrary conclusion? So I'm not sure it's enough just to pick and say, well, the finder of fact had conflicting evidence. That's not going to be sufficient to meet the evidence to support. Why should we conclude that the evidence compelled a contrary finding? Well, Your Honor, like the case in Ledesma, where the court said that the focus to determine whether a person is a habitual drunkard would be on the conduct. Now the conduct wasn't analyzed. It's some of the only conduct that was analyzed was what the petitioner's wife stated, not the the petitioner's conduct, not whether there was evidence that he wasn't a habitual drunkard. And that's the issue in this case. The issue is that there was not enough substantial evidence to take away when really I have when I read the IJ's opinion. I mean, there were the IJ didn't seem like ignored evidence. The IJ had a particular perception of what the facts were showing. And she prepared a decision that lays those out. We don't expect the IJ to write an encyclopedia on everything she hears, but she has given a fair amount of detail on the basis for her decision and what evidence she found to be most persuasive. Yeah, and she did use some of the evidence that was in the testimony, Your Honor, but it comes down to whether she analyzed the habitual drunkard bar correctly in petitioner's case, which the IJ did not. And I know that my time is up. So thank you both very much for your presentations today. The case of Juan Salazar Garcia versus Merrick Garland is now submitted.
judges: CLIFTON, MURGUIA, BRESS